UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL 66, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NORTHSHORE EXTERIORS, INC., <br><br> Defendant. | CASE NO. C19-1261JLR <br><br> ORDER DENYING MOTION TO DISMISS AND GRANTING LEAVE TO AMEND |

## I.  INTRODUCTION

Before the court are two motions: (1) Defendant Northshore Exteriors, Inc.'s ("Northshore") Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (MTD (Dkt. # 13); *see also* MTD Reply (Dkt. # 22)), and (2) Plaintiffs International Association of Sheet Metal, Air, Rail, and Transportation Workers ("SMART") and Sheet Metal Workers International Association Local 66's ("Local 66") (collectively, "Plaintiffs") motion for leave to amend the complaint (MTA (Dkt. # 25);

1 | *see also* MTA Reply (Dkt. # 29)). Northshore and Plaintiffs filed responses to the
2 | respective motions. (MTD Resp. (Dkt. # 21); MTA Resp. (Dkt. # 26).) The court has
3 | considered the parties' submissions, the relevant portions of the record, and the
4 | applicable law. Being fully advised, the court DENIES Northshore's motion to dismiss
5 | and GRANTS Plaintiffs' motion for leave to amend.[1]

## II. BACKGROUND

### A. Factual Background

Northshore is a sheet metal contractor. (Pet. (Dkt. # 4) at 3 ¶ 6.) The Central Puget Sound Transit Authority ("Sound Transit") hired Northshore to perform work on the E-130 East Link Extension, Bellevue to Seattle project (the "East Link Extension"). (*See id.* at 3-4 ¶¶ 7, 10.) In order to perform work on the East Link Extension, Northshore signed a letter of assent to the project-labor agreement governing work on the East Link Extension—the Sound Transit Project Labor Agreement for the Construction of Sounder Commuter and Link Light Rail Projects (the "PLA"). (*See id.* at 3 ¶¶ 7, 9.) Local 66 is also a signatory to the PLA. (*See id.* at 3 ¶ 8.)

After Sound Transit hired Northshore to perform work on the East Link Extension, Northshore assigned the installation of metal roof panels, substrate, water barriers, related flashings, coping, gutters, and downspouts (the "Work") to United Brotherhood of Carpenters (the "Carpenters"). (*See id.* at 4 ¶ 10.) At the time Northshore assigned the

---

[1] The parties did not request oral argument on either of the motions (*see* MTD at 1; MTD Resp. at 1; MTA at 1; MTA Resp. at 1), and the court finds oral argument unnecessary to the disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1  Work to the Carpenters, Northshore and the Carpenters had a collective bargaining

2  agreement that covered Northshore's construction work. (Meyer Decl. (Dkt. # 14) ¶ 3.)

3  The Carpenters are also signatories to the PLA. (Pet. at 3 ¶ 8.)

4  Pursuant to the dispute resolution provisions of the PLA, Local 66 challenged

5  Northshore's assignment to the Carpenters on the basis that the Work was within Local

6  66's jurisdiction, and, as such, should have been assigned to Local 66. (*See id.* at 4 ¶¶

7  10-13.) On June 27, 2019, after initial attempts to resolve the jurisdictional dispute

8  failed, Local 66 submitted a formal request to arbitrate. (*See id.* at 4 ¶ 13.) On July 18,

9  2019, SMART—Local 66's parent union—and the Carpenters settled their jurisdictional

10 dispute and agreed that the Work should be assigned to Local 66. (*See id.* at 3-4 ¶¶ 5, 14;

11 Meyer Decl. ¶ 7, Ex. 4 at 75.[2]) The settlement agreement stated that the Carpenters were

12 no longer claiming jurisdiction over the Work and that the Carpenters had asked SMART

13 to "reach out to the contractor in order to make arrangements to man the project with

14 SMART members." (Meyer Decl. ¶ 7, Ex. 4 at 75.) Pursuant to that settlement

15 agreement, the Plan Administrator issued a directive assigning the Work to Local 66 on

16 July 19, 2019 (the "Directive"). (*See id.* at 74.) The Directive ordered Northshore to

17 "assign the work in accordance with the attached [settlement] agreement reached between

18 the crafts." (*Id.*)

19 On July 19, 2019—the same date that the Plan Administrator issued the

20 Directive—Northshore raised several objections to the Directive but ultimately advised

---

[2] Because Exhibit 4 to the Meyer Declaration is not paginated, the court cites the page numbers supplied by its electronic docketing system.

the Plan Administrator that it would assign the Work "to [Local 66] consistent with the terms of the Sound Transit PLA." (Hem Decl. (Dkt. # 21-1) ¶ 12, Ex. 9.) Accordingly, on July 24, 2019, Local 66 demanded that Northshore assign the Work to Local 66 by requesting sheet metal worker dispatches from Local 66's hiring hall. (*Id.* ¶ 14.) On July 29, 2019, Northshore responded and advised Local 66 that Northshore was aware that the Work had been awarded to Local 66 and that Northshore "intend[ed] to abide by that decision for this project." (*See id.* ¶ 15, Ex. 10.) Northshore stated, however, that while it would "pay[] into the applicable trust funds," Northshore did not believe that the Administrator's Directive required Northshore to dispatch workers from Local 66's hiring hall because certain hiring provisions of the PLA were inapplicable to Northshore due to Northshore's collective bargaining agreement with the Carpenters. (*See id.*)

Local 66 filed a second grievance against Northshore on July 24, 2019. (Hem Decl. ¶ 17, Ex. 11.) In that grievance, Local 66 alleges that Northshore's hiring practices violate the dispatch procedures of the PLA. (*Id.*)

**B.    Procedural History**

Plaintiffs filed a petition to confirm and enforce the Plan Administrator's Directive on August 9, 2019. (*See* Pet. at 1.) Plaintiffs' sole cause of action is a claim to enforce the Directive pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (*See id.* at 7 ¶¶ 24-27.)

### III.    ANALYSIS

Northshore's motion to dismiss presents facial and factual challenges to Plaintiffs' petition. (*See* MTD at 6.) Northshore argues that the court lacks subject matter

jurisdiction over this case because there is no "case or controversy" under Article III of the U.S. Constitution. (*See* MTD at 6.) Northshore claims that the Directive ordered Northshore to assign the Work to Local 66, which Northshore believes it had already done by the time Plaintiffs filed this lawsuit. (*See id.*) Thus, according to Northshore, "[t]here is . . . no dispute about the applicability or propriety of the Directive," which means the court lacks subject matter jurisdiction over this case. (*See id.*) Plaintiffs respond that the parties' ongoing dispute over Northshore's compliance with the Directive establishes a case or controversy. (*See* MTD Resp. at 5.) Further, although Plaintiffs maintain that the operative complaint sufficiently establishes a case or controversy, Plaintiffs also seek leave to amend the petition to add additional facts that demonstrate that a live controversy exists in this case. (*See* MTA at 2.) In response, Northshore claims that the court should deny leave to amend because amendment would be futile. (*See* MTA Resp. at 2.)

**A.     Northshore's Motion to Dismiss**

    1.     Legal Standards

        *a.     Rule 12(b)(1)*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests the court's subject matter jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) ("An objection that a federal court lacks subject matter jurisdiction may be raised at any time."). "When a motion to dismiss attacks subject matter jurisdiction under Rule 12(b)(1) on the face of the complaint, the court assumes the factual allegations in the

complaint are true and draws all reasonable inferences in the plaintiff's favor." *City of L.A. v. JPMorgan Chase & Co.*, 22 F. Supp. 3d 1047, 1052 (C.D. Cal. 2014). A defendant may also mount a factual challenge, which the court resolves by considering extrinsic evidence. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). When a party raises the question of subject matter jurisdiction by factual motion, the plaintiff bears the burden of establishing the court's jurisdiction by "furnish[ing] affidavits or other evidence." *Meyer*, 373 F.3d at 1039.

    *b. Justiciability*

  The judicial power of the federal courts is limited to "cases" and "controversies." U.S. Const., Art. III, § 2. A federal court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). If there is no case or controversy within the meaning of those constitutional terms, then the court lacks subject matter jurisdiction to hear the claim. *See Baker v. Carr*, 369 U.S. 186, 198 (1962).

   2. <u>Merits</u>

  The court concludes that Plaintiffs raise a justiciable case or controversy. Northshore's facial challenge to the petition is baseless. The petition alleges that Northshore is not complying with the Directive's mandate to assign the Work to Local 66. (*See* Pet. at 2, 6. ¶¶ 2, 19.) Accordingly, Plaintiffs seek a court order enforcing the Directive and "ordering Northshore to assign work on the East Link Extension to [Local

66] consistent with the [D]irective," (*see id.* at 7 ¶ 1), which Plaintiffs claim they are entitled to under the terms of the PLA and the LMRA (*see id.* at 6-7 ¶¶ 20-23, 26). Those factual allegations establish a live controversy over Northshore's compliance with the Directive.

Northshore's allegation that the petition somehow "acknowledges" that Northshore has assigned the Work to Local 66 is perplexing. (*See* MTD at 16.) The petition quite clearly alleges that "Northshore refused to comply" with the Directive. (*See* Pet. at 2 ¶ 2.) Northshore obviously disagrees with that allegation, but its dispute over the veracity of the allegations in the petition cannot sustain a facial challenge to subject matter jurisdiction. *Meyer*, 373 F.3d at 1039 ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.").

Northshore's factual challenge to subject matter jurisdiction fares no better. In response to Northshore's factual challenge, Plaintiffs submitted evidence that Northshore has not complied with the Directive. (*See* Hem Decl. ¶¶ 11-16; *id.* ¶ 12, Ex. 9; *id.* ¶ 15, Ex. 10.) Specifically, Plaintiffs submitted a declaration from Local 66's business representative stating that he has demanded that Northshore assign the Work to Local 66 in accordance with the Directive, but Northshore has, "in practical terms, refus[ed] to hire Local 66 members" by refusing to use the Local 66 hiring hall. (*See id.* at ¶¶ 14-16; *see also id.* at ¶ 12, Ex. 9; *id.* ¶ 15, Ex. 10.) Plaintiffs also note that Northshore has been

awarded additional work on the East Link Project that requires metal roofing work (*see id.* ¶ 19), which suggests that Plaintiffs' objections to Northshore's interpretation of the Directive and PLA may have continued relevance to the East Link Project. The court concludes that this evidence is sufficient to establish a live case or controversy over whether Northshore is in compliance with the Directive.

As a result of Plaintiffs' claim that Northshore is not complying with the Directive, this case is distinguishable from the case Northshore primarily relies on, *Derwin v. General Dynamics Corp*, 719 F.2d 484 (1st Cir. 1983). In *Derwin*, the First Circuit noted that the union seeking to enforce an arbitration award "d[id] not allege that the company ha[d] repudiated or violated the award in some particular [*sic*] calling for judicial resolution" and did not seek "specific enforcement" of the award. *See id.* at 490. Accordingly, the court dismissed the union's attempt to confirm the award because the court was "simply being asked to put its imprimatur upon an arbitral award in a vacuum."[3] *See id.* at 491. Here, however, Plaintiffs claim that Northshore is not in compliance with the Directive and ask the court to order Northshore to comply with the directive going forward. (*See* Pet. at 2 ¶ 2; *id.* at 7 ¶ 1.) Thus, this case presents specific

---

[3] Northshore does not identify any Ninth Circuit cases that adopt *Derwin*'s holding that courts cannot confirm arbitration awards under the LMRA absent a concrete dispute over the award's application. (*See generally* Mot.) Moreover, *Derwin*'s rationale has not been universally adopted in other circuits. *See, e.g.*, *Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*, No. 08 CIV. 3658PAC, 2009 WL 855946, at *3 (S.D.N.Y. Mar. 26, 2009) ("The law in the Second Circuit is that § 301 may be invoked to confirm labor arbitration awards regardless of whether the parties have complied with the award enforcement granted[.]"). Regardless, because *Derwin* is factually distinguishable from this case, the court need not determine whether a party seeking to confirm an arbitration award under the LMRA must identify an ongoing dispute over the award in order to sustain a cause of action in federal court.

allegations of an ongoing dispute over an arbitration award that the parties failed to present in *Derwin*. *See Derwin*, 719 F.2d at 490-91.

The court recognizes that Northshore submitted evidence and argument to try to refute Plaintiffs' allegation that Northshore has refused to comply with the Directive. (*See generally* MTD at 18-20; MTD Reply at 2-3, 4-10; Meyer Decl.; Hilgenfeld Decl. (Dkt. # 23); Elbert Decl. (Dkt. # 24).[4]) But a motion to dismiss for lack of subject matter jurisdiction is not the appropriate procedural vehicle for the court to resolve factual disputes on the merits of Plaintiffs' claim to enforce the Directive. *See Meyer*, 373 F.3d at 1039 ("[A] [j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." (quoting *Sun Valley Gas, Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983))). The gravamen of Plaintiffs' claim to enforce the Administrator's Directive is Plaintiffs' allegation that Northshore has not complied with the Directive and must be ordered to do so going forward. (*See, e.g.*, Pet. at 2 ¶ 2, 7 ¶ 2.) If Northshore proves that it is already in compliance with the Directive, then this case would be more analogous to

---

[4] In its motion to amend the petition, Plaintiffs take issue with the "new" evidence that Northshore submitted in Mr. Elbert's declaration because Northshore filed that evidence with its reply. (*See* MTA at 2-3.) Although "[i]t is not acceptable legal practice to present new evidence or new argument in a reply brief," *Roth v. BASF Corp.*, C07-0106MJP, 2008 WL 2148803, at *3 (W.D. Wash. May 21, 2008), parties may present additional evidence in support of a reply brief, where "[t]he [r]eply [b]rief addressed the same set of facts supplied in [a party's] opposition to the motion but provides the full context to [the party's] recitation of the facts," *Terrell v. Contra Costa Cty.*, 232 F. App'x 626, 629 n.2 (9th Cir. 2007). The court will not determine whether the evidence in Mr. Elbert's declaration is "new" evidence that should be ignored or stricken because that declaration would not change the court's conclusion that Plaintiffs have established a case or controversy.

*Derwin* and the court would have to determine whether it has jurisdiction to confirm an arbitration award that Northshore does not contest and has not violated. But that result assumes that Plaintiffs are, in fact, wrong on an issue that relates to the merits of this action, and a motion to dismiss for lack of subject matter jurisdiction is not the appropriate forum to resolve the dispute between Plaintiffs and Northshore on that issue. *See Meyer*, 373 F.3d at 1040 ("The district court erred in characterizing its dismissal of Safe Air's complaint under Rule 12(b)(1) because the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits.").

In sum, the court rejects Northshore's facial and factual challenges to this court's subject matter jurisdiction. Plaintiffs have established a live case or controversy over whether Northshore is complying with the Directive. As such, the court DENIES Northshore's motion to dismiss.

**B.     Plaintiffs' Motion to Amend**

Plaintiffs' motion to amend seeks leave to amend the petition to add additional facts regarding the parties' dispute over Northshore's compliance with the Directive. (*See* MTA at 2, 4; *see also id.*, Ex. B ("Prop. Am. Pet.").) When the court's deadline for filing amended pleadings has not passed, the proper standard for considering a motion to amend a complaint is provided by Federal Rule of Civil Procedure 15(a). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992)). Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, courts deny leave to amend "due to 'undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Under this liberal standard, the court concludes that Plaintiffs are entitled leave to amend. Plaintiffs have not previously amended the petition, Northshore's opposition does not argue that Plaintiffs are acting in bad faith, and the scope of Plaintiffs' proposed amendment is minimal. (*See generally* MTA Resp.; Dkt.; Prop. Am. Pet.) Plaintiffs also sought leave to amend only two weeks after Northshore filed its reply brief in support of the motion to dismiss, which Plaintiffs claimed raised new arguments that gave rise to the need to add additional facts. (*See* MTA at 3-5.) Thus, amendment is timely and will not prejudice Northshore. Indeed, Northshore's only argument in opposition to the proposed amendment is that amendment is futile because Plaintiffs' amended petition still fails to allege a case or controversy. (*See* MTA Resp. at 2.) The court resolved that issue in Plaintiffs' favor on the operative petition. *See supra* § III.A.2. Thus, Plaintiffs' proposed amendment is not necessary to defeat Northshore's motion to dismiss. Nevertheless, Plaintiffs moved for leave to amend, and the court concludes that leave is warranted under Rule 15(a)(2). Accordingly, the court GRANTS Plaintiffs' motion to amend.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Northshore's motion to dismiss (Dkt. # 13) and GRANTS Plaintiffs' motion for leave to amend the petition (Dkt. # 25).

1 | The court ORDERS Plaintiffs to file their first amended petition (*see* Dkt. # 25, Ex. B) on

2 | the court's electronic docket within seven (7) days of the filing date of this order.

3 |     Dated this 28th day of February, 2020.

_____

JAMES L. ROBART
United States District Judge